```
 1               IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF COLUMBIA
 2

 3     United States of America,      ) Criminal Action
                                      ) Nos. 19-CR-196-1
 4                      Plaintiff,    ) and 19-CR-196-2
                                      )
 5     vs.                            ) ARRAIGNMENT AND PLEA
                                      ) HEARING
 6     Mohammad Sikder,               )
       District Properties, LLC,      ) Washington, DC
 7                                    ) June 20, 2019
                        Defendants.   ) Time:  10:00 a.m.
 8     _____

 9           TRANSCRIPT OF ARRAIGNMENT AND PLEA HEARING
                           HELD BEFORE
10          THE HONORABLE JUDGE AMY BERMAN JACKSON
                   UNITED STATES DISTRICT JUDGE
11     _____

12                   A P P E A R A N C E S

13     For the Plaintiff:       Cassandra Jane Barnum
                                U.S. DEPARTMENT OF JUSTICE
14                              P.O. Box 7611
                                Washington, DC 20044
15                              (202) 305-0333
                                Email:  Cassandra.barnum@usdoj.gov
16
       For the Defendants:      Peter C. Anderson
17                              BEVERIDGE & DIAMOND, P.C.
                                409 East Blvd.
18                              Charlotte, NC 28203
                                (704) 372-7370
19                              Email:  Panderson@bdlaw.com
                                James Bruce Slaughter
20                              BEVERIDGE & DIAMOND, P.C.
                                1350 I Street, NW, Suite 700
21                              Washington, DC 20005
                                (202) 789-6040
22                              Email:  Jslaughter@bdlaw.com

23     _____

       Court Reporter:          Janice E. Dickman, RMR, CRR, CRC
24                              Official Court Reporter
                                United States Courthouse, Room 6523
25                              333 Constitution Avenue, NW
                                Washington, DC  20001
```

```
 1              THE COURTROOM DEPUTY:  Good morning, Your Honor.
 2    This morning we have criminal case number 19-196-1 and -2, the
 3    United States of America versus Mohammad Sikder and District
 4    Properties, LLC.  Mr. Sikder is present and in the courtroom,
 5    Your Honor.
 6              Will counsel for the parties please approach the
 7    lectern and identify yourself for the record.
 8              MS. BARNUM:  Good morning, Your Honor.  Cassandra
 9    Barnum for the government.  With me at counsel table is Special
10    Agent Allison Landsman from the Environmental Projection
11    Agency.
12              THE COURT:  Good morning.
13              MR. ANDERSON:  Good morning, Your Honor.  Peter
14    Anderson, admitted pro hoc.  I appreciate that.  With me is my
15    co-counsel, Jimmy Slaughter, who is a member of Beveridge &
16    Diamond, as well.
17              THE COURT:  Good morning.  I understand that the
18    defendant wishes to enter a plea of guilty personally this
19    morning, and also that Mr. Sikder is going to be entering a
20    plea of guilty on behalf of District Properties, LLC, is that
21    correct?
22              MR. ANDERSON:  That is correct, Your Honor.
23              THE COURT:  What I'm going to try to do, instead of
24    doing an entire plea colloquy followed by an identical plea
25    colloquy, is to weave them together.  I think we only need to
```

1    put his information about his personal competency on the record

2    one time.  It may take a little longer, but I think it will

3    take less long than if we try to do it back to back.

4         But the first thing we need to do is arraign him and,

5    presumably, the company, as well, on the information.

6         MR. ANDERSON:  Yes, Your Honor.

7         THE COURT:  So let's have him join you at the

8    lectern.  We need to administer the oath and then move forward

9    with the plea.

10        THE COURTROOM DEPUTY:  Are you Mohammad Sikder?

11        THE DEFENDANT:  Yes.

12        THE COURTROOM DEPUTY:  Are you the person named in

13   the information?

14        THE DEFENDANT:  Yes.

15        THE COURTROOM DEPUTY:  Your Honor, may the record

16   reflect that the defendant and his attorney have both received

17   a copy of the information which has been filed in this case.

18        Mr. Sikder, you are charged in criminal case number

19   19-196-1 in a two-count information charging you with the

20   following:  Count 1, 15 United States Code §§ 2689, 2615(b) and

21   18:2, the Toxic Substances Controlled Act, failure to follow

22   lead-safe work practices and aiding and abetting, causing an

23   act to be done; and Count No. 2, 15 United States Code §§ 2689,

24   2615(b) and 18:2, Toxic Substances Control Act, failure to

25   provide lead disclosures and aiding and abetting, causing an

1    act to be done.  Do you waive formal reading of the

2    information?

3            MR. ANDERSON:  Yes, we do, Your Honor.

4            THE COURTROOM DEPUTY:  For purposes of the

5    information, Mr. Sikder, how do you plead --

6            THE COURT:  For purpose of the arraignment.

7            THE COURTROOM DEPUTY:  For purpose of the

8    arraignment.  Excuse me.

9            THE DEFENDANT:  Not guilty.

10           THE COURTROOM DEPUTY:  Please raise your right

11   hand -- let me do the arraignment in the other case.  I'm

12   sorry.

13           Mr. Sikder, are you the authorized representative of

14   the defendant District Properties named in the information?

15           THE DEFENDANT:  Yes.

16           THE COURTROOM DEPUTY:  Are you Mohammad Sikder?

17           THE DEFENDANT:  Yes.

18           THE COURTROOM DEPUTY:  Your Honor, may the record

19   reflect that Mr. Sikder, the authorized representative of the

20   defendant District Properties, LLC, and counsel have received a

21   copy of the information which has been filed in this case.

22           Mr. Sikder, as the authorized representative of

23   defendant District Properties, LLC, they are charged in

24   criminal case No. 19-196-2, in a one-count information charging

25   with the following:  Count 1, 18 United States Code §§ 1001,

1    and 18:2, false statements and aiding and abetting, causing an

2    acting to be done.  Do you waive formal reading of the

3    information?

4              MR. ANDERSON:  Yes, we do.

5              THE COURT:  For purposes of arraignment as to

6    District Properties, LLC, how do you wish to plead?

7              THE DEFENDANT:  Guilty.

8              THE COURT:  All right.  Now we do have to administer

9    the oath in connection with the sets of questions and answers

10   that are about to follow.

11                        MOHAMMAD SIKDER,

12   (whereupon the defendant was duly sworn and testified as

13   follows:)

14             THE COURT:  All right.  You can put your hand down.

15             Okay.  The purpose of the hearing this morning is for

16   you to make a decision and -- speaking about you personally --

17   the decision that I'm going to ask you to make is whether you

18   want to go to trial on the government's charges against you or

19   whether you want to enter a plea of guilty.  And that's a very

20   important decision, so the law requires me to ensure that you

21   understand what you're doing and you understand the

22   consequences of what you're doing.  And, so, that means I need

23   to ask you a number of questions, and some of them are

24   personal, but they're all designed to help me to make that

25   determination.

1          And so the first thing I want to tell you is if I ask

2     you a question and you don't understand it, you should feel

3     free to ask me to rephrase it.  And if I ask you a question and

4     you want to talk to your lawyer before you answer it, you have

5     the right to do that and all you need to do is just let me know

6     and I'll give you that opportunity.  Do you understand that

7     much?

8          THE DEFENDANT:  Yes.

9          THE COURT:  And also this morning I'm going to be

10     asking you to make a similar decision on behalf of the company

11     District Properties.  So do you understand that I'm going to be

12     talking to you as you, but then I'm also going to be talking to

13     you in your capacity as the representative of the company?  Do

14     you understand that?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Okay.  Now, you've just been sworn, so do

17     you understand that if you don't answer my questions

18     truthfully, that you could be prosecuted for another offense of

19     perjury or making a false statement?

20          THE DEFENDANT:  Yes.

21          THE COURT:  All right.  Now, Mr. Anderson, as I

22     understand it, in his individual capacity Mr. Sikder is going

23     to plead guilty to two misdemeanor counts of violating the

24     Toxic Substances Control Act; one for violating the renovation

25     repair and painting rule in § 2689 of the statute, and the

```
 1    other for violating the disclosure rule, and that the

 2    government is waiving its right to ask that he be detained

 3    pending sentence; is that correct?

 4              MR. ANDERSON:  That is correct, Your Honor.

 5              THE COURT:  And the company is going to be entering a

 6    plea to one felony count of a violation of 18 USC § 1001,

 7    making a false statement to the government?

 8              MR. ANDERSON:  That is correct, Your Honor.

 9              THE COURT:  And this is a wired plea.  His plea is

10    contingent upon the corporate plea, so that plea is going to be

11    entered this morning as well by the defendant as an authorized

12    corporate representative?

13              MR. ANDERSON:  Yes, Your Honor.

14              THE COURT:  Okay.  Mr. Sikder, as I said, in order to

15    decide whether or not I should accept your guilty plea and the

16    company's guilty plea, I'm going to be asking you a number of

17    questions.  And so the first question I need to ask you is:

18    How old are you?

19              THE DEFENDANT:  Fifty-nine.

20              THE COURT:  And can you read and write, sir?

21              THE DEFENDANT:  Nine --

22              THE COURT:  Can you read and write?

23              THE DEFENDANT:  Yes.

24              THE COURT:  Okay.  How far did you go in school?

25              THE DEFENDANT:  I finished master's in electrical
```

```
1    engineering.

2            THE COURT:  And where were you born?

3            THE DEFENDANT:  Bangladesh.

4            THE COURT:  I'm sorry?

5            THE DEFENDANT:  Bangladesh.

6            THE COURT:  Are you a U.S. citizen?

7            THE DEFENDANT:  Yes.

8            THE COURT:  Have you taken any alcohol or drugs in

9    the last 48 hours, or any medicine that could affect your

10   ability to understand what you're doing by pleading guilty?

11           THE DEFENDANT:  No.

12           THE COURT:  Are you suffering now from any physical

13   condition or illness or emotional or psychological condition

14   that affects your ability to understand what's going on this

15   morning and focus on my questions?

16           THE DEFENDANT:  No.

17           THE COURT:  Have you ever received any treatment for

18   any type of mental illness or emotional disturbance?

19           THE DEFENDANT:  No.

20           THE COURT:  Have you received a copy of the

21   information, the charges in this case, and have you fully

22   discussed the charges and the case with your lawyer?

23           THE DEFENDANT:  Yes.

24           THE COURT:  And has the company also received a copy

25   of the information, and on behalf of the company, have you
```

1  fully discussed the charges and the case with the company's

2  lawyer?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Are you personally completely satisfied

5  with the services of your lawyer in this case?

6          THE DEFENDANT:  Yes.

7          THE COURT:  And is the company also completely

8  satisfied with the services of its counsel in this case?

9          THE DEFENDANT:  Yes.

10          THE COURT:  Have you personally had enough time to

11  talk with your lawyer and discuss the case and the plea offer

12  and whether or not you should accept it?

13          THE DEFENDANT:  Can you repeat it?

14          THE COURT:  Have you had enough time to talk to your

15  lawyer and discuss the case and the plea and whether or not you

16  should accept it?

17          THE DEFENDANT:  I have enough time.

18          THE COURT:  Okay.  I'm basically asking you, are you

19  ready to do this today?

20          THE DEFENDANT:  Yes.  Yes.

21          THE COURT:  Or do you need more time to think about

22  it?

23          THE DEFENDANT:  No.

24          THE COURT:  And has the company made a decision that

25  it's ready to go forward today and it's had enough time to

1   think about this?

2          THE DEFENDANT:  No -- oh, yes, yes.

3          THE COURT:  Yes, it's had enough time and it's ready?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Okay.  All right.  Now, Mr. Sikder, you

6   and the company have certain rights in a criminal case and I

7   want to go through them all with you and make sure that you

8   understand them.

9          First of all, the company is pleading guilty to a

10   felony information, which means that you've been charged with a

11   felony, basically in a piece of paper that the government typed

12   up.  But when a company or an individual is charged with a

13   felony, they have the right to have the government present that

14   evidence to a grand jury and a grand jury vote that there was

15   probable cause that a crime was committed and the defendant

16   committed it.

17          So do you understand that if District Properties

18   pleads guilty to this felony information, it's giving up its

19   right to be indicted by a grand jury?

20          THE DEFENDANT:  Yes.

21          THE COURT:  And I have a piece of paper here called

22   Waiver of Indictment, it says:  District Properties, the

23   defendant, waives its -- consents that the proceeding may be by

24   information, rather than indictment.  And is this your

25   signature, signing on behalf of the company --

1           THE DEFENDANT:  Yes.

2           THE COURT:  -- giving up the company's right to be

3      indicted in this case?

4           THE DEFENDANT:  (Nods head.)

5           THE COURT:  All right.  Now, with respect to the

6      felony charges and the misdemeanor charges, you personally, in

7      your case, have the right to plead not guilty and to have a

8      jury trial in this case.  And the company has the same right.

9      And that means that 12 citizens of the District of Columbia

10     would sit there in that jury box and they would determine the

11     guilt or innocence of you and of the company based on evidence

12     presented in this case.  Do you understand that both you and

13     the company have a right to a jury trial in this case?

14          THE DEFENDANT:  Yes.

15          THE COURT:  And do you understand that if you had a

16     trial, you would have the right to be represented by your

17     lawyer at that trial?

18          THE DEFENDANT:  Yes.

19          THE COURT:  And do you understand that at the trial

20     you would have the right, through your lawyer, to confront and

21     cross-examine the witnesses against you?

22          THE DEFENDANT:  Yes.

23          THE COURT:  And that means that -- confronting them

24     means that you would have the right to sit there and watch them

25     testify.  And cross-examine them means that your lawyer would

1    have the right to ask them questions.  So you understand that

2    that's what happens at a trial?

3              THE DEFENDANT:  Yes.

4              THE COURT:  And do you understand that you would have

5    the right to present your own witnesses, and to subpoena them

6    and require them to be here in your defense, if you wanted to?

7              THE DEFENDANT:  Yes.

8              THE COURT:  And do you also understand that if there

9    were a trial, you would have the right to testify and present

10   evidence on your own behalf, if you wanted to, but you wouldn't

11   have to testify or present any evidence because you can't be

12   forced to incriminate yourself or present evidence in your own

13   case.  Do you understand that?

14             THE DEFENDANT:  Yes.

15             THE COURT:  And do you understand that unless and

16   until I accept your guilty plea, you are presumed by the law to

17   be innocent, because it's the government's burden to prove your

18   guilt beyond a reasonable doubt and until it does you can't be

19   convicted of a crime?

20             THE DEFENDANT:  Yes.

21             THE COURT:  So now that I've gone through all of this

22   with you, do you understand if you personally plead guilty in

23   this case and I accept your guilty plea, you're giving up all

24   the rights I just explained because there will be no trial?

25             THE DEFENDANT:  Yes.

1    THE COURT:  And do you also understand that if

2    District Properties, LLC pleads guilty, and I accept its guilty

3    plea, it will give up all the rights I just explained because

4    there will be no trial in its case either?

5    THE DEFENDANT:  Yes.

6    THE COURT:  And, so, I have two documents in front of

7    me that say Waiver of Trial by Jury, giving up this right to a

8    jury trial.  The first one is United States versus Mohammad

9    Sikder and there's a signature on it over the name "defendant."

10   Are you the one who signed this document, giving up your right

11   to a trial by jury personally?

12   THE DEFENDANT:  Yes.

13   THE COURT:  And are you the one who signed this

14   document that says United States of America versus District

15   Properties, giving up the company's right to a trial by jury in

16   this case?

17   THE DEFENDANT:  Yes.

18   THE COURT:  Now, do you also understand that if you

19   went to trial and you were convicted, you would have the right

20   to appeal your conviction to the Court of Appeals and to have

21   your lawyer help you prepare an appeal?

22   THE DEFENDANT:  Yes.

23   THE COURT:  And so do you understand that by pleading

24   guilty, you're giving up your right to appeal, unless I

25   sentence you to something that is greater than what the law

1     would permit me to sentence you to?  Do you understand that?

2                  THE DEFENDANT:  Yes.

3                  THE COURT:  And do you understand that District

4     Properties is also giving up its right to appeal its conviction

5     in this case?

6                  THE DEFENDANT:  Yes.

7                  THE COURT:  And there are laws that permit people to

8     come back into court and attack their convictions later.  And

9     do you understand that you're also giving up your right to come

10    back into court and say that there was something wrong with

11    your conviction, with the limited exception of if your lawyers

12    were ineffective or if there's newly discovered evidence.  But

13    you can't come back to court and say, you know, I'd kind of

14    like to take that back.  Do you understand that?

15                 THE DEFENDANT:  Yes.

16                 THE COURT:  All right.  And on behalf of District

17    Properties, do you also understand that you're giving up your

18    right to appeal and your right to attack this conviction later?

19                 THE DEFENDANT:  Yes.

20                 THE COURT:  Now, the corporation has also entered

21    into some other agreements.  And it's agreed that after this

22    plea it's not going to make any public statements that

23    contradict what you're admitting to in the statement of facts

24    here or any statements that contradict its acceptance of

25    responsibility in this case.  Do you understand that the

1    corporation has agreed to do that as part of this plea

2    agreement?

3                THE DEFENDANT:  Yes.

4                THE COURT:  And you've also agreed that if you sell

5    the company, whoever buys the company, it's going to have to be

6    in the contract documents that they're also bound by the same

7    promises you're making.  Do you understand that?

8                THE DEFENDANT:  Yes.

9                THE COURT:  Now, under the Federal Rules of Evidence

10   and the Federal Rules of Criminal Procedure, if somebody enters

11   a plea of guilty and that plea is later withdrawn, the fact

12   that they pled guilty in court and admitted to the offense

13   cannot be admitted in a later trial against you.  But do you

14   understand as part of your guilty plea, you're giving up those

15   protections and so if you end up withdrawing your guilty plea

16   and there's a trial against you, the fact that you stood here

17   and swore that you did this can be admitted in evidence in that

18   case.  Do you understand that?

19               THE DEFENDANT:  Yes.

20               THE COURT:  Do we have the same provision with

21   respect to the company?  I can't recall.  It's probably in

22   there.

23               MS. BARNUM:  I don't recall off the top of my head.

24               THE COURT:  All right.  Let's check.

25               (Pause.)

1          THE COURT:  So you understand that the company has

2     also waived that protection?  So if the company ends up

3     withdrawing its plea and there's a trial against it, the fact

4     that you stood here on behalf of the company and admitted this

5     offense is going to be admissible in that trial.  Do you

6     understand that?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Now, Mr. Sikder, I'm going ask the

9     prosecutor to tell you and me what happened in this case.  I

10    know we have a written statement, but I think it's important

11    for you to actually hear it said out loud in a courtroom.  And

12    when she's finished I'm going to ask you if everything she's

13    told me is true and accurate.  So, do you understand that?

14         THE DEFENDANT:  Yes.

15         THE COURT:  Okay.  So you can be seated.  And I'm

16    going to ask the prosecutor to come up and tell me and the

17    defendant what the government's evidence would show if the case

18    went to trial.

19         MS. BARNUM:  Thank you, Your Honor.  The government's

20    evidence would show that in May of 2014 the defendant's company

21    purchased property located at 4323 Garfield Street, NW, in

22    Washington, D.C.  In pursuit of renovating and later selling

23    the home located at that address for a profit, the defendant

24    applied for a building permit.  And as part of that process, in

25    an environmental checklist, as part of applying for a building

1    permit with the District of Columbia, there's a series of

2    questions designed to indicate what environmental risks might

3    be posed at the property, one of which is:  What is the date

4    that the home was constructed?  Is it before or after 1978?

5    which is when people stopped using lead paint.

6            In that permit, purposefully and at Mr. Sikder's

7    direction, the company stated that the home was built after

8    1978, when in fact they knew that it had been built long prior

9    to that.

10           They hired a contractor who performed work at the

11   site that was beyond the scope of the permit and, more

12   importantly, did not conform to the requirements of the

13   renovation, repair, and painting rule related to containment of

14   lead paint, dust in renovation activities, and warning signs

15   with respect to both the workers and the neighbors.  An OSHA

16   inspection that occurred at the property revealed multiple

17   lead-based paint-related hazards resulting from that renovation

18   activity at the property.

19           With respect to disclosure, the contractor, who is

20   also sort of serving as a lead paint consultant, documented the

21   presence of lead-based paint at the property in sampling

22   results, but wrote a report stating that there was no lead-

23   based paint at the site.  When D.C. regulators asked him about

24   the discrepancy, he created a revised report, acknowledging the

25   presence of lead paint at the site.

1         The property was sold in 2017, after renovations had

2    been completed, the site had been cleaned up, and another

3    environmental contractor had issued a report stating that the

4    property was free of lead.  In their disclosures to the

5    purchaser of the home they included that final lead-based paint

6    report, stating that the property was free of lead, but did not

7    include the previous reports indicating that there had been

8    lead-based paint at the property prior to the completion of the

9    renovation.  He was required to include all reports relating to

10   lead-based paint at the property.

11        With respect to Count 3, the false statement claim,

12   the government would show that the defendant's company, at his

13   direction and with his knowledge, submitted no fewer that 25

14   building permits for different properties to the District of

15   Columbia stating that homes built prior to 1978 had been built

16   after 1978.  And the goal of this was to avoid regulatory

17   oversight of lead-based paint handling.

18        THE COURT:  So the reference in the statement of the

19   offense to the 25 permits, those weren't follow-on permits

20   related to this house, it's 25 other properties?

21        MS. BARNUM:  Correct, 25 different properties, Your

22   Honor.

23        THE COURT:  And were they renovated in the way this

24   was, resulting in the lead being in the atmosphere?

25        MS. BARNUM:  The government's evidence would not

1    address that issue.  To be frank, we don't know.  All we know

2    is the age of the homes and what the permit said.

3              THE COURT:  All right.  Okay.  Thank you.

4              Mr. Sikder, you and your attorney can come back to

5    the lectern.

6              Is what the government just told me a true and

7    accurate statement of what happened in this case?

8              THE DEFENDANT:  Yes.

9              THE COURT:  And so, when the company completed these

10   permits, indicating that the house was built after 1978, you,

11   on behalf of the company, knew that those statements were false

12   at the time you wrote them down?

13             THE DEFENDANT:  It's not -- it happened, yes.

14             THE COURT:  I'm sorry?  I just need to know whether

15   you're answering yes or no when I can, please.

16             THE DEFENDANT:  Yes.

17             THE COURT:  And, so, with respect to the case against

18   both you and the company, I have a document in front of me

19   called Statement of Offense that sets out in more detail the

20   information that was just put on the record by Ms. Barnum.

21   Have you had an opportunity to read the statement of offense

22   and go over it with your lawyer?

23             THE DEFENDANT:  Yes.

24             THE COURT:  And is this your signature on the last

25   page, accepting the statement of offense as true?

1           THE DEFENDANT:  Yes.

2           THE COURT:  And you're accepting it as true

3     personally, as Mohammad Sikder, is that correct?

4           THE DEFENDANT:  Yes.

5           THE COURT:  And you're also saying that in your

6     capacity as the representative of the company, you're also

7     accepting this as true, is that right?

8           THE DEFENDANT:  Yes.

9           THE COURT:  And before I took the bench I had you

10    read it over again and initial and date every page.  And the

11    reason I do that is so that people -- by doing that they're

12    telling me I actually read every page of this and I agree with

13    every page of this; I didn't just sign something on the last

14    page that my lawyer gave me to sign.

15          So are you the one who initialed and dated every page

16    of this statement of offense, telling me that you agree with

17    all of it?

18          THE DEFENDANT:  Yes.

19          THE COURT:  And I have two more documents in front of

20    me, one is a letter to your lawyer regarding you, United States

21    of America versus Mohammad Sikder, and one is a letter to your

22    lawyer regarding United States versus District Properties.  So,

23    first, I want to talk to you about the letter to your lawyer

24    about you personally.

25          Have you had an opportunity to go over this letter

1    and this proposed plea agreement with Mr. Anderson and

2    Mr. Slaughter?

3              THE DEFENDANT:  Yes.

4              THE COURT:  All right.  Now, are you the one who

5    signed it on the last page, accepting the government's plea

6    offer in this letter?

7              THE DEFENDANT:  Yes.

8              THE COURT:  And are you the one who dated and

9    initialed every page of this letter, telling me that you read

10   it and that you've had an opportunity to go over all of it with

11   your lawyer?

12             THE DEFENDANT:  Yes.

13             THE COURT:  Now, I'm not going to go over word for

14   word every single thing in the plea agreement, but as I

15   understand it, you're pleading guilty to two misdemeanor

16   offenses, two violations of the Toxic Substance Control Act.

17   So do you understand that if I accept your guilty plea in this

18   case, you personally could receive a sentence of up to one year

19   on each count?

20             THE DEFENDANT:  Yes.

21             THE COURT:  And do you understand that while I know

22   you've talked to the government about whether they should be --

23   your sentence should be two sentences that are served

24   consecutively or served concurrently, do you understand that I

25   could sentence you to serve up to one year on each count

1    consecutively, after each other?

2          THE DEFENDANT:  Yes.

3          THE COURT:  And do you understand that if you serve a

4    sentence of incarceration, I could also sentence you to serve a

5    term of supervised release of up to one year on each count?

6          THE DEFENDANT:  Yes.

7          THE COURT:  And do you understand that with respect

8    to each count, I could sentence you to pay a fine of up to

9    $100,000?

10          THE DEFENDANT:  Yes.

11          THE COURT:  And that since these are misdemeanors, I

12    am also going to sentence you to pay a special assessment of

13    $25 per count to the court.  Do you understand that?

14          THE DEFENDANT:  Yes.

15          THE COURT:  And that's what can happen to you, you

16    personally, as a result of this offense.  But, do you also

17    understand, in your capacity as the representative of District

18    Properties -- first of all, are you the one who, for District

19    Properties, signed the letter to your lawyer accepting the plea

20    offer for the company?

21          THE DEFENDANT:  Yes.

22          THE COURT:  And on behalf of the company, have you

23    initialed and dated every page of that plea agreement, telling

24    me that you've read it?

25          THE DEFENDANT:  Yes.

1          THE COURT:  All right.  Now, that letter specifies,

2     most importantly, that for a violation of 18 U.S. Code § 1001,

3     the company could be fined and ordered to pay up to $500,000.

4     Do you understand that?

5          THE DEFENDANT:  Yes.

6          THE COURT:  And do you also understand that the

7     company could be, itself, put on a term of probation for up to

8     five years?

9          THE DEFENDANT:  Yes.

10          THE COURT:  And do you also understand that the

11     company will be ordered to pay a special assessment of $400 for

12     this felony count into the court?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Now, let's talk about your sentence again

15     for a moment.  I'm not going to sentence you today.  At the

16     time of sentencing I'm going to have to consider a number of

17     factors.  I'm going to have to consider what you did, I'm going

18     have to consider who you are and what your history has been

19     before this, and I'm going to have to consider a number of the

20     purposes that a criminal sentence is supposed to fulfil.

21          One of the things I'm going to have to think about at

22     the time I sentence you is what the U.S. sentencing guidelines

23     would recommend as a sentence in your case.  Congress has

24     appointed a commission and it has created a complicated set of

25     guidelines that provide for a recommended sentencing range

1    based on what the offense is, and then it can go up or down

2    based on various facts related to the offense and based on

3    things you did and who you are and things that can make it

4    either more serious or less serious.  And, so, while we have

5    some idea right now what the sentencing guidelines might

6    recommend in your case, we won't know until the probation

7    office has had the opportunity to prepare a presentence report

8    and you've looked at it with your lawyer and had the government

9    has looked at it and I've looked at it and we've resolved any

10   disputes related to the presentence report.

11          But, as we're waiting for that process, have you and

12   your lawyer talked about the sentencing guidelines and how they

13   might apply in your case?

14          THE DEFENDANT:  (Nods head.)

15          THE COURT:  I need you to say yes or no for the

16   record, so the court reporter --

17          THE DEFENDANT:  Yes.

18          THE COURT:  As I understand it, Mr. Anderson, the

19   base offense level under § 2Q1.2(a), we start at a level 8.

20   Because there was more than one release, repetitive releases,

21   you add four levels.  And given his position as a leader and

22   organizer of this offense, under § 3B1.1 there's a one-level

23   enhancement, which brings you to level 13.  He would receive

24   credit for his acceptance of responsibility in this case, which

25   would be a two-level reduction, to level 11, which, if his

1    criminal history is what we understand it to be, which is no

2    prior criminal history, that would result in the guidelines

3    recommending to me a sentencing range of 8 to 14 months.  Do I

4    have the calculation correct?

5              MR. ANDERSON:  That is correct, Your Honor.

6              THE COURT:  All right.  Now, have you -- does that

7    sound like what you've talked to your lawyer about?  Do you

8    understand that the sentencing guidelines would recommend a

9    sentencing range of 8 to 14 months in your case?

10             THE DEFENDANT:  Yes.

11             THE COURT:  I understand, also, that the parties are

12   agreed that that would be the offense level.  No one is seeking

13   a departure under the guidelines.  The parties have agreed to

14   recommend concurrent sentences.  And while they're agreed that

15   the defendant can seek a lower sentence, he is agreeing that

16   eight months would be a reasonable sentence in this case.  Do

17   you understand that you're agreeing to that?

18             THE DEFENDANT:  Yes.

19             THE COURT:  Okay.  And the parties have also agreed

20   to jointly recommend a fine in the amount of $50,000.  Is that

21   correct?

22             THE DEFENDANT:  Yes.

23             THE COURT:  And is this a fine to be paid by him

24   personally, as opposed to private company?

25             MR. ANDERSON:  Yes, Your Honor.

1          THE COURT:  All right.  So, do you understand now,

2     though, that that's what we think the guidelines are going to

3     recommend, but I'm not going to be able to decide what the

4     guidelines recommend until after we've received the presentence

5     report from the probation department?

6          THE DEFENDANT:  Yes.

7          THE COURT:  And do you understand that after I've

8     decided what guideline applies to your case, that I have the

9     authority, in some circumstances, to impose a sentence that's

10    more severe or less severe than what the guidelines would

11    recommend?

12         THE DEFENDANT:  Yes.

13         THE COURT:  And that while the parties have agreed to

14    recommend to me certain things -- what the fine should be and

15    that the sentence should be concurrent -- it's going to be up

16    to me, at the end of the day, what the sentence is going to be.

17    Do you understand that?

18         THE DEFENDANT:  Yes.

19         THE COURT:  And do you understand that if the

20    sentence is more severe than what you're hoping for or what you

21    and the government are going to recommend, that you can't

22    withdraw your guilty plea just because of that reason?

23         THE DEFENDANT:  Yes.

24         THE COURT:  All right.  And do you also understand

25    that parole has been abolished for federal offenses and if

1    you're sentenced to prison, you're going to serve the sentence

2    I impose, with a possible reduction for good time served, but

3    there's not an early release on parole the way there used to

4    be?

5              THE DEFENDANT:  Yes.

6              THE COURT:  Has anyone, including your attorney, the

7    police, the prosecutor, or any other person you've come in

8    contact with during this investigation promised you or

9    suggested to you that just because you're pleading guilty --

10   now we're talking about you -- that I will give you a lighter

11   sentence?

12             THE DEFENDANT:  No.

13             THE COURT:  Has anybody forced you or threatened you

14   or coerced you in any way into entering this plea of guilty?

15             THE DEFENDANT:  No.

16             THE COURT:  We talked about this letter that has an

17   agreement between the government and you.  Has anybody made any

18   promises to you about what your sentence is going to be that

19   aren't written in this letter?

20             THE DEFENDANT:  No.

21             THE COURT:  Has anybody promised you what your

22   sentence is going to be if I accept your guilty plea?

23             THE DEFENDANT:  No.

24             THE COURT:  And do you understand at this point I

25   don't even know what the sentence is going to be because I

1    haven't had the chance to hear from your lawyers or hear from

2    the probation office?

3              THE DEFENDANT:  Yes.

4              THE COURT:  And do you also understand that while the

5    government is not asking that you be incarcerated between now

6    and the day of your sentence, that's also a decision that's

7    going to be up to me?

8              THE DEFENDANT:  Yes.

9              THE COURT:  Are you entering this plea of guilty

10   voluntarily and of your own free will, because you are guilty

11   and for no other reason?

12             THE DEFENDANT:  Yes.

13             THE COURT:  Is there anything that you don't

14   understand about this proceeding or about your personal guilty

15   plea in this case?

16             THE DEFENDANT:  Yes.

17             THE COURT:  I'm asking --

18             THE DEFENDANT:  No.  Right.

19             THE COURT:  That's okay.  Let me just ask the

20   question again.  Is there anything you don't understand about

21   the proceeding or about your personal plea in this case?

22             THE DEFENDANT:  No.

23             THE COURT:  Is there anything you want to ask me or

24   ask your lawyer before I ask you for your personal decision

25   about the charges against you?

1              THE DEFENDANT:  Yes.

2              THE COURT:  All right.  Well, I was asking if there's

3      any question you want to ask me.  Is there anything you want to

4      ask me or your lawyer?

5              THE DEFENDANT:  No.  No.

6              THE COURT:  Are you ready right now to make a

7      decision about whether you personally want to enter a plea of

8      guilty or whether you want to go to trial?

9              THE DEFENDANT:  Yes.

10             THE COURT:  And what is your decision?  Do you want

11     to plead guilty or do you want to go to trial?

12             THE DEFENDANT:  Yes, I want to plead guilty.

13             THE COURT:  Okay.  I am satisfied that the defendant

14     Sikder, as an individual, is fully competent and capable of

15     making a decision today, that he understands the nature and

16     consequences of what he's doing, and that he's acting

17     voluntarily and of his own free will, and that there is an

18     adequate factual basis for his plea and, therefore, I'm going

19     to accept Mr. Sikder's plea.

20             Now I want to talk about the plea on behalf of the

21     company, because this is a different kind of plea.  As if this

22     wasn't complicated enough.

23             Under Federal Rule of Criminal Procedure 11(c)(1)(C),

24     the parties have agreed to this plea agreement.  And that rule

25     says if I accept the company's plea, I am going to have to give

1    them the sentence that you and the government have agreed to.

2    And in this case that would be a sentence of a $150,000 fine

3    and a $400 special assessment, to be paid within five days of

4    the date of sentencing.  And part of the agreed sentence is

5    also a two-year term of probation, with a number of conditions

6    set out in the plea agreement involving educating other people

7    about this offense and about the rules.

8              So, do you understand that if I accept the plea, do

9    you understand, as a representative of the company, that if I

10   accept your plea, that is the sentence that the company is

11   going to receive?

12             THE DEFENDANT:  Yes.

13             THE COURT:  However, if I reject the plea, if I

14   decide that that's not the sentence I want to impose, I'm going

15   to let you know, and then I would give the company the chance

16   to maintain its plea and go forward with its sentencing anyway,

17   or to withdraw the plea.  But, if the company maintained the

18   plea, do you understand that the sentence could be more severe

19   than the one we're talking about?

20             THE DEFENDANT:  Yes.

21             THE COURT:  And if I don't accept the plea agreement,

22   perhaps if I think it's too harsh, the government would have

23   the opportunity to withdraw from the plea agreement and it

24   could decide to charge the company and add more charges.  Do

25   you understand that?

1          THE DEFENDANT:  Yes.

2          THE COURT:  But if you both say let's go forward

3   anyway, then at that point the company would be sentenced.

4          THE DEFENDANT:  Yes.

5          THE COURT:  And that sentence would be decided in

6   accordance with the statute and the federal guidelines that

7   would usually apply, and in that case the company could be

8   sentenced to pay up to half a million dollars.  Do you

9   understand that?

10         THE DEFENDANT:  Yes.

11         THE COURT:  I just want to make sure I've advised you

12  of all the consequences of the sentence for the company.

13         And, also, if you were being sentenced without the

14  benefit of the agreement under Rule 11(c)(1)(C), you, as the

15  company, District Properties, could not only pay a fine of up

16  to half a million dollars, but could also be required to be on

17  probation for up to five years, as opposed to two years.  Do

18  you understand that?

19         THE DEFENDANT:  Yes.

20         THE COURT:  Now, with respect to the company, has

21  anyone made you a promise or suggested that just because it

22  pleads guilty, it's going to get a lighter sentence?

23         THE DEFENDANT:  No.

24         THE COURT:  Has anyone forced or threatened District

25  Properties into entering this plea of guilty?

1           THE DEFENDANT:  No.

2           THE COURT:  Now, we talked about there's a letter

3    here with the plea agreement between the government and

4    District Properties.  Has anybody made any promises to District

5    Properties that aren't set out in the second letter?

6           THE DEFENDANT:  No.

7           THE COURT:  Has anybody promised you what sentence I

8    will impose if I don't accept the guilty plea and you go

9    forward and get sentenced anyway?

10          THE DEFENDANT:  No.

11          THE COURT:  But you understand that if I do accept

12   your plea, you're going to get the sentence that is in the plea

13   agreement?

14          THE DEFENDANT:  Yes.

15          THE COURT:  Is the company entering its plea of

16   guilty voluntarily and of its own free will, because it is

17   guilty and for no other reason?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Is there anything that you, on behalf of

20   the company, would like to ask me or the company's lawyer

21   before you make a decision on behalf of the company as to

22   whether it wants to go to trial or plea guilty?

23          THE DEFENDANT:  Yes.

24          THE COURT:  Well, I'm asking, are there any questions

25   that you have, or are you ready?

1          THE DEFENDANT:  No, I don't have any questions.

2          THE COURT:  You're ready to go forward on behalf of

3     the company?

4          THE DEFENDANT:  Yes.

5          THE COURT:  And you've been authorized to do that by

6     the company?

7          THE DEFENDANT:  Yes.

8          THE COURT:  All right.  So what is the company's

9     decision about whether it wishes to enter a plea of guilty or

10    whether it wishes to go to trial?

11         THE DEFENDANT:  Plead guilty.

12         THE COURT:  Okay.  I'm satisfied that on behalf of

13    the company, this defendant and the company that has authorized

14    him to do this is competent and capable of making this decision

15    and that the company understands the nature and consequences of

16    what it's doing, and that it's acting voluntarily and that

17    there is an adequate factual basis for its plea.  I'm also

18    satisfied that this defendant was authorized and competent to

19    enter a plea on behalf of District Properties.

20         I understand that with respect to the company, the

21    parties are not asking that a presentence report be prepared,

22    but I do think that I will get -- I will have more information

23    on the nature and circumstances of this offense on both the

24    part of the individual and the company after the presentence

25    report for Mr. Sikder has been completed.

1    So I am going to defer my acceptance of the corporate

2    plea and my sentencing of the company until the sentencing date

3    for Mr. Sikder.  So at this point, while his plea has been

4    accepted, I'm going to -- Rule (c)(1)(C) requires me to

5    sentence and accept the plea at the same time.  So I'm going to

6    defer that until that date.

7    So I believe that what we need to do at this time is

8    set a sentencing date.  Have we figured out, Mr. Haley, how

9    long -- the period of time it is from today?

10    THE COURTROOM DEPUTY:  Seventy-five days from today

11    is Tuesday, September 3rd, Your Honor.

12    THE COURT:  All right.  All right.  So I think we're

13    looking at an early September date.  And I don't have any

14    problem with receiving one sentencing memorandum from the

15    defendant on behalf of the defendant individually, and then you

16    can have a separate section within it as to why the corporate

17    sentence is appropriate, and the government can do the same

18    thing, as opposed to filing multiple pleadings.

19    MR. ANDERSON:  If that's fine with Your Honor, we

20    wouldn't object to that.  One question, if I may?

21    THE COURT:  Yes.

22    MR. ANDERSON:  Because we're hoping to complete that

23    educational seminar prior to the sentencing -- and I don't

24    believe the government has any objection -- pushing the

25    sentencing hearing back later into the fall, either the

1   November or December timeframe?  We would like to report to the

2   Court that the training has been done and then file proof of

3   it.  There's not a lot of -- in order to maximize the

4   attendance in the summer, you know.  So if Your Honor would

5   consider pushing that sentencing back, or we can file a motion

6   to continue, jointly agreed, in the November/December

7   timeframe.

8            THE COURT:  I don't see the point of setting a date

9   that we're going to continue.

10           MR. ANDERSON:  Okay.

11           THE COURT:  So I think we should just go ahead and

12   set a sentencing date that works for everyone.  I take it the

13   government doesn't have any objection to having this be at a

14   time that would enable them to complete these obligations

15   first?

16           MS. BARNUM:  No, Your Honor.  I would like to get it

17   done before the holiday season.  So early November would be --

18           THE COURT:  All right.  I believe I'm going to be in

19   the thick of a trial in early November, but I think we can come

20   up with a date, hopefully, before that.  Well, November is just

21   a disaster.

22           MR. ANDERSON:  Maybe you'll need a day of reprieve

23   during the trial, Your Honor.

24           MS. BARNUM:  And this would be great fun.

25           THE COURT:  I haven't quite determined whether I'm

1      going to be sitting on Fridays in that case.  But, the second

2      week begins with Veterans Day and so I'll probably need to sit

3      that Friday.  Why don't we say Friday, November 22nd, which

4      would be the Friday before Thanksgiving.

5                 MR. ANDERSON:  Thank you, Your Honor.

6                 THE COURT:  But to do that and really have time to

7      look at everything, would you be able to get me your sentencing

8      memoranda by October 30th?

9                 MR. ANDERSON:  Certainly.

10                THE COURT:  And if there are more training seminars

11     that take place during the month of November, you can just

12     submit something in addition.  But I would like to have the

13     opportunity to read what you give me before the trial starts,

14     so I have plenty of time to think about it.

15                MR. ANDERSON:  Certainly, Your Honor.

16                THE COURT:  So sentencing submissions will be due on

17     the 30th.  The sentencing will be at 9:30 in the morning on

18     Friday, November 22nd.

19                I find, given the defendant's voluntary appearance

20     here to enter this plea, that he's established that he's not

21     going to flee or pose a danger to another person or the

22     community between now and the time of sentencing, and I'm going

23     to release him on his personal recognizance during that period

24     of time.

25                Does he have a passport?

```
 1              MR. ANDERSON:  One notation, Your Honor.  With no
 2     objections from the government, Mr. Sikder and his family are
 3     scheduled to leave the country on Monday.  The investigation
 4     has been going on for over two years.  He's attended every
 5     meeting that I've requested.  There's zero -- in light of the
 6     misdemeanor, there's zero concerns that we have that he would
 7     reappear.  We would ask to allow him to travel this Monday.
 8     And then he returns on September 8th --
 9              THE DEFENDANT:  No.
10              MR. ANDERSON:  I'm sorry, July 8th.
11              THE DEFENDANT:  July.
12              MR. ANDERSON:  And he would return his passport by
13     July 10th.  And then the conditions -- he's not traveling
14     internationally from then until after the sentencing date.  But
15     because this was planned, he's got family overseas, we would
16     request the Court to exercise its discretion to allow him to
17     travel just during that period.
18              THE COURT:  What's the government's position?
19              MS. BARNUM:  We don't oppose that.
20              THE COURT:  He's going to be released on his personal
21     recognizance.  He has permission to make the international
22     trip, provided that he provides pretrial services with a
23     detailed itinerary of when he's leaving, the flights, where
24     he's staying, and when he's coming back.  He needs to notify
25     pretrial services within two business days of his return, and
```

1    to provide his passport to them at that time.

2                    MR. ANDERSON:  Yes, Your Honor.

3                    THE COURT:  And, so, we need to have him sign the

4    conditions of release before we depart today, and I need to

5    sign them as well.

6                    Is the government asking for any other conditions of

7    release?

8                    MS. BARNUM:  No, Your Honor.  I am told that I need

9    to request a booking order from the Court in order to

10   facilitate his processing with the marshals.

11                   THE COURT:  Okay.  Ordinarily that requires you to be

12   standing here with a piece of paper entitled Booking Order that

13   I sign.  You do not have one?

14                   MS. BARNUM:  I do not have that.

15                   MR. ANDERSON:  And, Your Honor, we intend to go

16   directly from this hearing -- oh, I'm sorry.

17                   THE COURTROOM DEPUTY:  Two different -- he'll be

18   processed downstairs, but the booking order is separate with

19   being processed from the booking order below.  That takes him

20   to MPD.  All he's doing is going to the cellblock to get

21   processed by the marshals.

22                   THE COURT:  And then they need that order to transfer

23   him?  I mean, do we need it today, before he goes through their

24   process?

25                   MS. LANDSMAN:  That's what I was told.

1          THE COURT:  All right.  Perhaps you can coordinate

2     with the U.S. Attorney's Office, that should have these handy,

3     but I don't.

4          MS. BARNUM:  Okay.  We'll find one.  I don't -- I

5     don't have anyone from the USA with a computer right now, but I

6     can run around a little bit and get one back to the -- to

7     Mr. Haley as soon as possible.

8          THE COURT:  All right.  If you get it to Mr. Haley,

9     Mr. Haley will get it to me.  I will be here today and I will

10    sign it.  And the defendant can go directly to the cellblock.

11    You may have to wait for this process to play itself out before

12    you complete everything that you need to do today.  But you are

13    ordered to be booked in accordance with the order that is about

14    to be presented to me for my signature.

15         Is there anything else I need to take up right now on

16    behalf of the defendant?

17         MR. ANDERSON:  Not from the defendant, Your Honor.

18    Thank you.

19         THE COURT:  Anything further on behalf of the

20    government?

21         MS. BARNUM:  No, Your Honor.

22         THE COURT:  I'm going to wait until the conditions of

23    release are printed and then I'll sign them and then the

24    defendant can sign them and then you all can be excused.

25         (Pause.)

1          THE COURT:  Conditions of release also require that

2     you contact pretrial services once a week by telephone.

3          I think it probably might make sense also, before you

4     leave the building, just to check in with pretrial and let them

5     know about the trip and this order, so that they don't start

6     looking for his passport or wondering where he is in the next

7     couple of weeks.

8          MR. ANDERSON:  Certainly.  Thank you, Your Honor.

9          (Pause.)

10          THE COURTROOM DEPUTY:  Sir, please rise and raise

11     your right hand.  Just stand right there and raise your right

12     hand.

13          Do you solemnly affirm or truly declare that you will

14     well and truly follow the conditions of release that have been

15     set forth by the Court this date and which you are about to

16     sign and receive?

17          THE DEFENDANT:  I do.

18          THE COURTROOM DEPUTY:  Okay.

19          (Pause.)

20          THE COURTROOM DEPUTY:  Judge, we're done.

21          THE COURT:  All right.

22          MS. BARNUM:  Thank you for your patience, Your Honor.

23          THE COURT:  I want to do it right.  I don't think

24     I've ever done one of these that was exactly at the same time

25     or the same person.  But I think we covered all the things we

1    needed to cover.

2              MR. ANDERSON:  It was very well weaved, Your Honor.

3              THE COURTROOM DEPUTY:  We're good, Judge.

4              THE COURT:  Thank you very much, everybody.

5                          *   *   *

1                    CERTIFICATE OF OFFICIAL COURT REPORTER

2

3

4          I, JANICE DICKMAN, do hereby certify that the above

5     and foregoing constitutes a true and accurate transcript of my

6     stenograph notes and is a full, true and complete transcript of

7     the proceedings to the best of my ability.

8                         Dated this 1st day of November, 2019.

9

10

11                         /s/_____

12                         Janice E. Dickman, CRR, RMR, CRC
                           Official Court Reporter
13                         Room 6523
                           333 Constitution Avenue NW
14                         Washington, D.C. 20001

15

16

17

18

19

20

21

22

23

24

25